No. 369    June 5, 2024    13

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA JAMES WILLIS,
*Defendant-Appellant.*

Josephine County Circuit Court
10CR0676; A177724

Robert S. Bain, Judge.

Argued and submitted October 3, 2023.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

In 2011, appellant pleaded guilty to unlawful delivery of marijuana, *former* ORS 475.860(2) (2009), *repealed by* Or Laws 2017, ch 21, § 126. In 2021, while still incarcerated on other charges, appellant moved to set aside his marijuana conviction pursuant to *former* ORS 475B.401 (2019), *renumbered as* ORS 475C.397 (2021).[1] The trial court denied appellant's motion on the basis that his conviction would not qualify to be set aside until he completed his term of post-prison supervision (PPS), which had not yet begun as appellant was still incarcerated. Appellant challenges the denial of his motion and raises two assignments of error. In his first assignment, appellant argues that the state constitution entitled him to court-appointed counsel at the contested hearing. We conclude that because a contested set aside hearing is not part of a "criminal prosecution" within the meaning of Article I, section 11, of the Oregon Constitution, appellant did not have a right to counsel at the hearing. In his second assignment, appellant argues that the trial court erred in denying his motion because PPS is not part of "the sentence of the court" under ORS 475C.397(7)(b)(C). After an examination of the text, context, and legislative history of the statute, we conclude that the legislature intended "the sentence of the court" to include any attendant term of PPS, and consequently, appellant's conviction is not eligible to be set aside until he completes his term of PPS. We therefore affirm.

"We review a lower court's interpretation of a constitutional provision for legal error." *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999); *see also State v. Whitten*, 278 Or App 627, 628, 379 P3d 707 (2016) (reviewing for errors of law a trial court's determination that a traffic violation proceeding is not a "criminal prosecution" pursuant to Article I, section 11). Similarly, whether a movant is entitled to have their conviction set aside is a question of law which we review for legal error. *State v. Singleton*, 317 Or App 49, 50, 503 P3d 499 (2022).

---

[1] The statute has not been substantively amended since its enactment, and accordingly, we refer to the current numbering of the statute for the remainder of the opinion.

The pertinent facts are procedural and undisputed. In 2011, appellant entered a plea deal to resolve six pending criminal cases against him. As part of that deal, he pleaded guilty to unlawful delivery of marijuana, among other charges. On the delivery conviction, appellant was sentenced to 26 months of incarceration followed by a three-year term of PPS. In total, the deal resulted in a 164-month term of incarceration.

In 2014, Oregon voters legalized the possession, manufacture, and sale of marijuana, subject to state licensing requirements and regulation. *See generally* Or Laws 2015, ch 614. The state legislature subsequently enacted a set aside process by which individuals could remove marijuana related convictions from their criminal records, provided that the conviction is "qualifying," defined as follows:

"'Qualifying marijuana conviction' means a conviction for a marijuana offense:

"(A)   Based on conduct described in ORS 475C.305 or possession of less than one ounce of the dried leaves, stems or flowers of marijuana;

"(B)   Committed prior to July 1, 2015; and

"(C)   For which the person has completed and fully complied with or performed the sentence of the court."

ORS 475C.397(7)(b).

In 2021, appellant moved to set aside his delivery conviction pursuant to ORS 475C.397. At that time, appellant had completed the 26-month term of incarceration imposed for the delivery conviction, but he was still incarcerated under the terms of the plea deal. The District Attorney objected to appellant's motion on the basis that the delivery conviction would not qualify for the set aside until appellant was no longer incarcerated and had completed his three-year term of PPS.

The trial court held a contested hearing on appellant's motion. At that hearing, appellant asked whether he could "request for counsel." The trial court explained that appellant was not entitled to court-appointed counsel:

"I don't think you're entitled to a court appointed attorney. You're certainly welcome to have an attorney represent you. But I'm not, I don't believe you have the right to a court appointed attorney on a motion to set aside a conviction."

The hearing proceeded with appellant unrepresented. The court ultimately denied appellant's motion on the basis that his delivery conviction did not qualify under the statute because appellant had not yet completed his PPS.

Beginning with appellant's first assignment of error, the question is whether a set aside proceeding is part of a "criminal prosecution" within the meaning of Article I, section 11. Appellant argues that "[a] contested hearing to set aside a conviction triggers the right to counsel, because it is an adversarial hearing involving a prosecutor, it occurs as part of the criminal case, the burden of proof is on the [appellant], and the stakes include the stigma of a criminal conviction." Specifically, appellant asserts that a contested set aside hearing is a "continuation of the criminal case" because the proceeding is "held in the court of conviction, typically under the same case number (as happened here)." The state responds that "a proceeding initiated by a motion to set aside a conviction, although related to a criminal case, is not, itself, a criminal prosecution." Accordingly, in the state's view, the state constitutional right to counsel does not apply. For the reasons that follow, we agree with the state.

Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]"

To determine whether an individual is entitled to court-appointed counsel, the first question then is "whether there is a 'criminal prosecution[],' because the text of Article I, section 11, makes the right to counsel applicable only in that instance." *State v. Gray*, 370 Or 116, 130-31, 515 P3d 348 (2022) (brackets in original). If the proceeding is part of a criminal prosecution, in addition to any "critical stage" of the prosecution, "counsel cannot be excluded from any stage of the criminal prosecution at which a defendant is to be 'heard,'" and where, "without the assistance of counsel,

the legal interests of the defendant might be prejudiced." *State ex rel Russell v. Jones*, 293 Or 312, 315, 647 P2d 904 (1982); *see also State v. Davis*, 350 Or 440, 475, 256 P3d 1075 (2011) (noting that the scope of the state constitutional right to counsel is not limited to critical stages of criminal prosecutions).

To determine whether a proceeding is a "criminal prosecution" for constitutional purposes, we evaluate the punitive significance and the penal characteristics of the proceeding, specifically considering the type of offense, the penalty incurred, the collateral consequences, the stigmatizing effect of the judgment, and the availability of pretrial arrest and detention. *State v. Benoit*, 354 Or 302, 308, 311 P3d 874 (2013) (discussing *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 102-08, 570 P2d 52 (1977)). "[A]ll those factors are relevant, but none is conclusive ***." *Benoit*, 354 Or at 308 (internal quotation marks and brackets omitted). If the proceeding "retains too many penal characteristics," it is part of a "criminal prosecution" for purposes of Article I, section 11. *Id.* (internal quotation marks omitted).

At the outset, we note that the Oregon Supreme Court has squarely held that a set aside proceeding is not a criminal proceeding for jurisdictional purposes. *State v. K. P.*, 324 Or 1, 5, 921 P2d 380 (1996). In *K. P.*, the court held that a set aside proceeding is "not a criminal action" and thus, "an appeal of the ruling on that motion *** is not governed by ORS chapter 138[,]" relating to criminal appeals. *Id.* Rather, a set aside proceeding is a "special statutory proceeding" under *former* ORS 19.010(4) (1995), *renumbered as* ORS 19.205(5) (2003), and Oregon appellate courts have jurisdiction to review an appeal of the ruling on the motion under ORS chapter 19, relating to appeals generally. *Id.* at 5-6. In reaching its conclusion, the court reasoned that a set aside proceeding serves a "rehabilitative function" and is therefore "the antithesis of the original criminal conviction, not an adjunct to it." *Id.* Because *K. P.* involved the interpretation and application of jurisdictional statutes, its holding does not fully resolve the constitutional question before us. *See Brown*, 280 Or at 102 ("When the legislature has defined conduct as a criminal offense, it is a criminal offense for

constitutional purposes even if the same consequences could have been attached to the same conduct by civil or administrative proceedings. But it does not follow that a law can avoid this result simply by avoiding the term 'criminal' in defining the conduct to be penalized. Constitutional guarantees have more substance than that."). We find the underlying reasoning in *K. P.* instructive because it is analogous to the constitutional test set out above, in that the court in *K. P.* similarly assessed whether the proceeding serves a punitive function.

Returning to the governing constitutional principles, a set aside proceeding does not fit neatly into the multifactor evaluation originally identified in *Brown*. To start, a set aside proceeding under ORS 475C.397 is not designed to prove whether an individual has engaged in certain conduct constituting an "offense." Further, the appellant does not incur a penalty if their motion fails. Although a set aside proceeding requires an underlying criminal conviction, which in many cases, including appellant's, carried with it the possibility of imprisonment, the set aside process is a *remedy* that does not otherwise affect the movant's punishment. *State v. Burke*, 109 Or App 7, 12, 818 P2d 511 (1991), *rev den*, 312 Or 589 (1992) (holding that removing child abuse convictions from eligibility for "the set aside remedy" does not violate the Ex Post Facto Clauses of the state or federal constitutions). As we have explained:

> "The availability of a procedure for sealing one's criminal record is unrelated to the length or nature of an individual's incarceration or constructive custody. It does not increase imprisonment, forestall parole or extend probation. It does not decrease the trial judge's discretion to impose the sentence that is most appropriate for the individual. Further, it is a *collateral* matter that does not change the primary effect of a conviction."

*Id.* (emphasis in original). Finally, pretrial arrest and detention are not available to the court while the motion is pending.

Appellant emphasizes the stigmatizing effect of the set aside proceeding. When a trial court denies a set aside motion, the consequence for the movant is that the

conviction remains on their record, which, we acknowledge, allows the stigma of that conviction to continue. Importantly though, that stigma attaches at the time of conviction, not at the time the motion is denied. Moreover, we have previously observed that "the social stigma that may attach to an individual with a criminal record is inflicted by the citizenry and the community," and therefore, the denial of a set aside motion "cannot constitute the governmental imposition of a 'punishment,' in the constitutional sense of that word." *Id.* at 13. Indeed, the core purpose of the set aside process is to remove that stigma: "The legislature intended [set aside proceedings] to combat the stigma associated with the public nature of a record of arrest or conviction by providing individuals with such a record the opportunity to purge it and start fresh." *State v. McVein*, 305 Or App 525, 529, 471 P3d 796 (2020). We conclude that the set aside process is not punitive in nature and that the proceeding itself does not retain the penal characteristics of a criminal prosecution.

As to appellant's assertion that the proceeding is a continuation of the criminal case because it is held in the court of conviction under the same case number, the Supreme Court has previously rejected such a "formalistic approach" in favor of a functional assessment. *See State v. Branstetter*, 332 Or 389, 397, 29 P3d 1121 (2001). In *Branstetter*, the Supreme Court held that a forfeiture order was sufficiently "separate" from the underlying criminal prosecution, and therefore, the appellate courts have jurisdiction to review that order as a "special statutory proceeding." *Id.* at 392. In that case, before the appellant was acquitted, the trial court entered a forfeiture order against the appellant that was filed as part of the underlying criminal action. *Id.* at 393-94. The state argued that the forfeiture order was unappealable because the action was formally part of the criminal case, and our criminal jurisdictional statutes do not provide for an appeal from an acquittal. *Id.* at 394. The court rejected the state's argument that formal separateness, specifically separate case numbers, was required. *Id.* at 397. Rather, the court reasoned that although a forfeiture proceeding "formally depends on a criminal action for its existence in that it can go forward only if a criminal action of a specified sort is pending, that kind of forfeiture proceeding does not arise

out of the criminal action, resolve any controversy in the criminal action, or otherwise affect or depend on the substance of the criminal action." *Id.* at 398-99.

While *Branstetter*, like *K. P.*, did not resolve a constitutional question, we similarly find its underlying reasoning helpful. A formalistic approach that simply matches the case number and court of conviction is incongruent with the multi-factor evaluation set out in *Brown*, where no single factor is dispositive. Just as *Branstetter* noted that a forfeiture proceeding depends on the existence of an underlying criminal action but does not otherwise resolve or have any other effect on that action, we note that the same is true in the context of set aside proceedings. While a set aside proceeding necessarily requires an underlying criminal conviction, it is otherwise disconnected from the substantive components of that criminal case because it does not involve the adjudication of guilt or otherwise affect sentencing. Because a set aside proceeding under ORS 475C.397 is not part of a "criminal prosecution," Article I, section 11, does not entitle a movant to court-appointed counsel at a contested set aside hearing. Accordingly, the trial court did not err in denying appellant's request for court-appointed legal counsel.

Turning to appellant's second assignment of error, the question is whether a movant must complete PPS to fully comply with "the sentence of the court" before their conviction qualifies to be set aside under ORS 475C.397(7)(b). As noted above, a qualifying marijuana conviction is a conviction (1) based on conduct described in ORS 475C.305, (2) committed prior to July 1, 2015, and (3) for which the person "has completed and fully complied with or performed the sentence of the court." ORS 475C.397(7)(b). Appellant argues that he complied with "the sentence of the court" when "he fully served his prison sentence and paid all his fees." In appellant's view, his three-year term of PPS is not part of his sentence, and, therefore, the trial court erred in denying his motion. We conclude, as the state argued, that the text, context, and legislative history of ORS 475C.397 indicates that the legislature intended "the sentence of the court" to include a term of PPS.

When interpreting a statute, our task is to give effect to the intent of the legislature, and to do so, we first examine the statute's text and context, then consider the relevant legislative history to the extent it is useful to the analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). If the legislature's intent remains unclear after examining the text, context, and relevant legislative history, we resort to general maxims of statutory construction. *Id.* at 172.

We begin with the plain text of ORS 475C.397(7)(b)(C) which refers to the "sentence of the court," without defining that term or otherwise referencing PPS. ORS chapter 475C similarly does not define "sentence." We turn, then, to dictionaries:

> "[W]e presume that the ordinary meaning of a word is reflected in a dictionary. While Oregon courts generally rely on *Webster's Third New International Dictionary*, consulting several dictionaries * * * better ensures that a court determines a word's ordinary usage and avoids the possibility that dictionary selection affects the outcome."

*Hollister*, 305 Or App 368, 373, 470 P3d 436 (2020) (internal quotation marks and citations omitted). As relevant here, *Webster's* defines "sentence" as "a decision or judicial determination of a court or tribunal" such as "the judgment passed by a court or judge on a person on trial as a criminal or offender" or "the order by which a court or judge imposes punishment or penalty upon a person found guilty." *Webster's Third New Int'l Dictionary* 2068 (unabridged ed 2002). *Black's Law Dictionary* defines "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer." *Black's Law Dictionary* 1636 (11th ed 2019). We have likewise observed in the context of a juvenile delinquency case that a sentence "must be ordered by the court, it must be a disposition that affects a criminal or an offender, and it should serve to punish or penalize." *State v. Trice*, 146 Or App 15, 19, 933 P2d 345, *rev den*, 325 Or 280 (1997). A term of PPS is ordered by the court and included in the judgment, its imposition requires a criminal offender to continue under the supervision of the Department of Corrections while in the community, and its duration is tied

to the seriousness of the crime of conviction. OAR 213-005-0002(2) - 213-005-0003. PPS, thus, appears to fall within the definition of "sentence."

We look next to the statute's context, specifically, Oregon's sentencing guidelines, which define PPS as part of an offender's "sentence." OAR chapter 213 outlines sentencing guidelines, and the legislature has expressly approved those rules, giving them the authority of statutory law. Or Laws 1989, ch 790, § 87; *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000) ("Although the sentencing guidelines were created as administrative rules, the legislature approved them in 1989, giving them the authority of statutory law."). Specifically, OAR 213-005-0002(1) provides that "[a] term of community supervision is *part of the sentence* for any felony offender * * *." (Emphasis added.) OAR 213-005-0002(4) also provides that "the total duration of any sentence" includes "prison incarceration and post-prison supervision." We think it unlikely that the legislature intended to deviate from the definition of "sentence" provided by the sentencing guidelines without explicitly providing an alternative definition.

We also look to the general set aside statute, ORS 137.225, for context. The general set aside statute requires that an individual "has fully complied with and performed the sentence of the court" to be eligible for a set aside. ORS 137.225(1)(a). In *State v. Branam*, 220 Or App 255, 259, 185 P3d 557, *rev den*, 345 Or 301 (2008), we addressed the question whether the defendant's noncompliance with his initial sentence of probation made him ineligible for a set aside. We concluded that the "relevant sentence" under the set aside statute "is the one that ultimately is imposed—here, the incarceration sentence imposed after revocation of [the] defendant's probation." *Id.* at 260. We added that "where a defendant initially is sentenced to probation but probation is later revoked and the defendant is sentenced to an incarceration term (and accompanying term of [PPS]), the relevant 'sentence of the court' * * * is the incarceration term[.]" *Id.* at 263-64. Appellant relies on that latter language in *Branam* to argue that we were excluding PPS from an offender's sentence in the context of the general set aside statute. But he reads more into *Branam* than is there. The language

describing the relevant sentence as the "incarceration term" must be understood in the context of our broader conclusion in *Branam* that the "sentence of the court" is the sentence ultimately completed by the appellant, notwithstanding any intervening period of probation that is later revoked. The question whether PPS is included in the "sentence of the court" was neither raised nor decided in *Branam*.

The legislature amended ORS 137.225 after we decided *Branam*. Importantly, the legislative history of those amendments does not reference *Branam*. And while the amendments affected how the general set aside statute treats probation revocation by clarifying that "[a] person whose sentence of probation was revoked may not apply to the court for entry of an order setting aside the conviction *** for a period of 10 years from the date of revocation[,]" Or Laws 2015, ch 820, § 32a, the change did not concern whether PPS is part of "the sentence of the court." How long a person must wait to apply for the general set aside of a conviction after violating and having been revoked on the probation that he or she was serving on that conviction is a different question from whether PPS is included in the "sentence of the court" that must be fulfilled to qualify for the filing of a motion to set aside in the first instance.

The 2015 amendments also added language to ORS 137.225 that clarified that "[a] person who is still under supervision, or who is still incarcerated, *** has not fully complied with or performed the sentence of the court." Or Laws 2015, ch 820, § 32a. As appellant notes, that same clarifying language was not expressly included in the marijuana set aside statute, enacted in 2019. But the 2015 amendment to ORS 137.225 simply made explicit that the definition of "sentence" in that statute is aligned with the definition of "sentence" already provided by the administrative rules and approved by the legislature. We do not read the omission of that clarifying language from ORS 475C.397 to reflect an intent by the legislature to exclude PPS from the term "sentence of the court." Indeed, such a reading would create inconsistency between the text of ORS 475C.397 and context that we have already described in which that text exists.

Finally, we turn to the legislative history of ORS 475C.397 to the extent that it might be helpful. That history suggests that the legislature intended the set aside process to be expedient. *See* Audio Recording, Senate Committee on Judiciary, SB 420, Apr 5, 2019, at 3:13 (comments of Sen Lew Frederick), https://olis.oregonlegislature.gov (accessed Apr 30, 2024) ("Senate Bill 420 *** would streamline the expungement process by only requiring those seeking to clear their records to complete a simple form, which petitions the court to set aside the conviction. Senate Bill [420] would allow for an expedited expungement of a marijuana offense for a conviction prior to July 1, 2015, for any conviction that would *** now be legal under ORS 475B."). However, the legislative history does not affirmatively demonstrate that the legislature intended to accomplish that expediency by allowing individuals to apply for a set aside before complet- ing the "sentence of the court," including PPS. The legislative history suggests instead that legislators were specifically concerned that a judicial or administrative set aside process without an accompanying source of revenue would impede the bill's mission and efficacy. *See* Audio Recording, House Committee on Judiciary, SB 420, May 22, 2019, at 1:00:27 (comments of Rep Duane Stark), https://olis.oregonlegisla- ture.gov (accessed Apr 30, 2024) ("I am concerned overall of the ongoing impact to [the Oregon Judicial Department] if we are providing yet another free service that could increase their workload ***. *** I'm worried that when our courts aren't open long enough already, that adding more free things is going to continue to have a negative effect on their ability to serve people appropriately."). The legislature, thus, intended to create a streamlined process for setting aside qualifying marijuana convictions to avoid financial burden to the state. The legislative history does not support defendant's theory that the legislature intended to omit PPS from the meaning of the term "sentence of the court" as used in the marijuana set aside statute.

The text, context, and relevant legislative history strongly suggest that the legislature did not intend the mean- ing of "the sentence of the court" in ORS 475C.397(7)(b)(C) to deviate from the definition provided in the sentencing guidelines. We conclude that PPS is part of the sentence that

appellant must complete before he is eligible to have his marijuana conviction set aside. The trial court did not err in denying his motion on that basis.

Affirmed.